# COUNTY OF OXFORD.

### Mary W. Tobin *versus* Joseph C. Shaw.

A plaintiff, who had received from the defendant letters, which, if existing, would be admissible in evidence, may prove their contents by secondary evidence, where the destruction of them is shown to have arisen from misapprehension, and was without any fraudulent purpose; notwithstanding their destruction was the plaintiff's own voluntary act.

To repel the inference of fraud, a witness, who was present and advised the destruction of the letters, may be allowed to state his declarations made to the party at the time; such declarations being admissible as a part of the *res gestæ*, and as explanatory of the motive which influenced the party to destroy them.

The destruction of the letters was a question for the determination of the Court; and, from the evidence, the *Court* was also to determine that their destruction was not the result of a dishonest purpose.

In an action for breach of promise to marry the plaintiff, her anxiety of mind, if produced by the defendant's violation of his promise, is an element to be considered in the estimation of damages; and it will not be deemed improper that a witness was permitted to testify as to the *mental difference* he observed in the plaintiff, after the defendant had ceased to visit her.

The non-production of a writing, shown to be in the hands of a party who has been duly notified by the opposite party to produce it at the trial, is a circumstance that may properly be considered by the jury; and is also a proper subject for the comment of counsel in argument.

Assumpsit for an alleged breach of promise to marry the plaintiff.

The trial, before Cutting, J., at the August term, 1857, resulted in a verdict for the plaintiff. The case is presented to the full Court, on Exceptions to various rulings and instructions of the presiding Judge at the trial.

It appears by the bill of exceptions that at the trial the plaintiff called Harriet Bishop, who testified that she was plaintiff's sister; had seen letters from defendant in plaintiff's possession, some twenty or more; she, (witness,) had the bundle of letters in her possession at her father's, in 1848, or

1849.    Received them from plaintiff, and kept them a long time at her own house, in Wayne.    When she was about to leave Wayne and the State, she went home on a visit to her father's; carried the letters with her and gave them to plaintiff.    Witness had read some of these letters.    They were burned.

Plaintiff's counsel here asked witness what she said to plaintiff at the time the letters were burned, to which defendant's counsel objected, but the Court overruled the objection, and the witness answered: — "I advised her to burn them. The plaintiff burned them.    I told her, probably if she prosecuted Mr. Shaw, they would not be needed, or used, in Court; don't recollect which.    I told her they might be mislaid and fall into the hands of some one who we would prefer should not have them.    I mentioned a case to her where letters were not used."

Benjamin Tobin was called as a witness by the plaintiff, and testified that he was plaintiff's father.    That the last time he recollected of defendant's being at his house was in May, 1849.    That his, defendant's, brother Wilson was with him, and that they dined with them that day.    That his impression was, that the last time defendant had been there, before that, was in January, 1848.

Plaintiff's counsel here asked the witness, if he observed any mental difference in Mary after he left, to which defendant's counsel objected; but the Court overruled the objection, and the witness answered as follows: —

"After he, defendant, left, my impression was that she appeared more melancholy, and of less life and animation.    At one time I found her weeping without knowing the cause."

Plaintiff here called for all letters written by plaintiff to defendant, but only one was produced.

Charles C. Tobin, called by plaintiff, testified: — "I heard defendant state how many letters he received from plaintiff, when on the stand as a witness in this case at the other trial. He said he had received nineteen letters, I think, and, I think, he said he had written her as many as she had him.    I think

Tobin *v.* Shaw.

I heard defendant say at that time that the letters were here, but will not state positively. I saw a bundle of papers, which I supposed to be letters, in possession of defendant, or Mr. Walton. I saw one or the other take from amongst others what purported to be her letter, and read as such in Court to the jury?"

Plaintiff's counsel here asked the witness to state what Mr. Smith, counsel for plaintiff, then said, to which defendant's counsel objected, but the Court overruled the objection, and witness was allowed to testify as follows:—

"I heard Mr. Smith tell Mr. Walton that he wanted all those letters put into the case. They were not put in to my knowledge. This was in open Court during the former trial."

Sullivan C. Andrews was then called as a witness for plaintiff, and testified:—

"I was one of the counsel for plaintiff, when this case was tried in November last. During the investigation of the trial, perhaps the second day, some discussion took place between the counsel, about the introduction of the letters from the plaintiff to the defendant.

Witness then narrated what was said by the counsel respectively, tending to show that the letters were in Court at the former trial, and that the counsel of plaintiff desired their production, but was not permitted to use, or to see them.

Plaintiff identified two or three letters which were presented to her by defendant's counsel. They refused to let all but one go into the case, which one went to the jury with the other papers. After the jury returned, it was withdrawn by them.

This testimony was admitted against defendant's objection.

Sampson Reed was called as a witness by plaintiff, and, among other things, testified:—

"I have known the family of the defendant thirty years, and have been acquainted with the plaintiff from a small child. I saw her in the winter of 1849, at my house. She came to do some work, and remained from a week to ten days. I did not know of her being sick while there."

Plaintiff's counsel here asked the following question:—

"What was her, (plaintiff's,) condition, mentally, and her appearance?"  To which the witness answered:—

"She appeared sober and melancholy.  I saw her in tears a number of times."

Plaintiff's counsel then asked the following question:—

"State whether you dismissed plaintiff from your service, and for what cause you dismissed her," which was answered by the witness as follows:—

"I dismissed her from service because the state of her mind was such she was not capable of doing her work."

To both of the foregoing questions, and the answers thereto, defendant's counsel seasonably objected, but the Court overruled the objections and admitted the answers.

Mary W. Tobin, plaintiff, (called by plaintiff,) among other things, testified:—"Our correspondence was kept up until 1848.  I received twenty-five letters in all from defendant. I received two letters from him previous to 1845, which I did not answer.  I answered all his letters except three.  *  *  * All the letters I received from him have been destroyed. *  *  *  After he left me, he wrote me a letter, and I answered it, and I have not written since.  He wrote the last letter that passed between us.  His last letter I have burnt up with the others.  All the letters that I received from him have been destroyed.  I think in 1854."

Plaintiff's counsel here put the following interrogatory to the witness:—"Relate the whole contents of a letter, if you received any in 1847, relating to a Thanksgiving ball."  The witness answered as follows:—

"I can't recollect the whole, but can the substance.  It was as follows: he said he should not be able to come to Hartford on Thanksgiving, but if I had an opportunity to go to a ball, to go.  This was not his own language, it was this—he said, I shall not be able to go to Hartford at Thanksgiving, but if you want to go to a ball with any one, I want you to go."

When the above interrogatory was put, defendant's counsel objected to the plaintiff's being allowed to prove, by parol,

the contents of the letters written by defendant to her, and to the foregoing interrogatory in particular; but the Court overruled the objection, and ruled that plaintiff might prove by parol the contents of all, or any of those letters; and the foregoing answers were admitted; but no further evidence was offered by plaintiff of the contents of any of said letters. It was admitted that Thanksgiving day of that year was November 25.

Joseph C. Shaw, defendant, (called by defendant,) testified in the case.   On cross-examination, the counsel for plaintiff proposed, and afterwards put to the witness, the two following interrogatories:—

1. "Was there any thing in those letters (written by plaintiff to you,) in relation to a conditional engagement?"

2. "State the language, in substance, of all the letters delivered by you to your counsel, written to you by plaintiff, and relating to any condition in any engagement heretofore existing between you and the plaintiff, before the first of January, 1848."

To both of which questions defendant's counsel seasonably objected upon two grounds.

First, because they call for only a part of these letters. Secondly, because plaintiff had destroyed his letters to her, and had not proved or attempted to prove their contents. But the Court overruled both objections, and the witness answered as follows:—

"I don't know as there is.   I never have read the letters since I was sued.   I cannot answer the second question.   I don't know as there is any thing, in the letters prior to 1848, relating to a conditional engagement.   I can't remember any thing about it."

Plaintiff put into the case a letter from her to the defendant, dated February 6, 1848, which is to make part of the case.   No further evidence of the contents of any letters from plaintiff to defendant was offered or put into the case by the plaintiff.   The defendant was notified in writing, the day before the trial, to produce all letters in his possession

written by the plaintiff, to him, that the same might be used in evidence at the trial, but they were not produced. It was admitted that those letters were in Court, in possession of defendant's counsel.

There was evidence on the part of the defendant, other than the letter above referred to, tending to prove that the alleged contract, if any, between the parties, had been rescinded by mutual consent. And the plaintiff testified that she never had consented, and stated particularly what was said between the parties at the interview referred to in said letter.

The Judge instructed the jury, among other things, that both parties rely upon the letter in the case from plaintiff to defendant. The defendant relies upon it as conclusive evidence that the contract, if any such was ever made between the parties, was rescinded or absolved by mutual consent. The plaintiff relies upon it as a recapitulation of what took place between them at their interview on the first of January, 1848. I instruct you that you may take the letter into consideration, in connection with all the other evidence in the case bearing upon this point, and give it such consideration as it deserves. That is the only letter written by plaintiff to defendant which is in the case. In respect to the others, written by plaintiff to defendant, they have not been exhibited, and hence arises an important consideration. When a party withholds paper evidence of importance to the other party, after due notice to produce it, the contents of the papers may be proved to the jury. The non-production of the letters, under such circumstances, is a subject for your consideration. The plaintiff contends that the letters, if produced, would prove an unconditional promise by the defendant; the defendant contends that the contents might have been proved by plaintiff or defendant, and that they had been allowed to do so by the Court; and therefore that no inference should be drawn against defendant by reason of their non-production; which respective positions I instruct you are a subject matter for your consideration.

Tobin *v.* Shaw.

*Record & Walton*, in support of the exceptions, argued: —

1. That the statements of Harriet Bishop in a private conversation between her and the plaintiff, ought not to have been received.  They cannot be regarded as *res gestæ.*

The admission of such evidence will open a door to all the evils which the rule  excluding hearsay evidence is intended to guard against.

The opinion of the witness, whether the letters were of much or little importance in the case, was not admissible; and, to allow her to testify what opinion she had expressed at another time, was still more objectionable.  It was hearsay evidence of an opinion expressed by her, whether the letters would be needed or not, in case the plaintiff prosecuted the defendant.   In view of a prosecution against the defendant, the plaintiff had voluntarily destroyed his letters to her, which are always the most satisfactory evidence of the true relations existing between the parties in such cases, and to influence the minds of the jury with the belief that they were of no importance, and that such cases were tried without using the letters, the opinion of the witness, and her statements to that effect, were allowed to go to the jury.   Not only the manner of getting this witness' opinion before the jury, but the opinion itself was objectionable and prejudicial to the rights of the defendant, and the testimony ought not to have been received.    1 Greenl. on Ev. § § 108, 123–4; *Mima Queen* v. *Hepburn*, 7 Cranch, 290, 296; *Kingsley* v. *Slack*, 5 Cush. 585; *Battles* v. *Batchelder*, 39 Maine, 19.

2. Both the question and the answer excepted to in the testimony of Benjamin Tobin, are objectionable.

The witness might have been rightfully asked how plaintiff appeared before and how she appeared after the event referred to, but not as to any mental difference.

The answer being the witness' *impression* only, should have been excluded.  Not being an expert, the witness was not competent to express his opinion, and the word impression, as he used it, can mean nothing more.   He should have been limited to the statement of facts.

3. Plaintiff was allowed to prove to the jury, by Charles C. Tobin and S. C. Andrews, a conversation, or, as the witness Andrews called it, a discussion, which had taken place between counsel at a former trial, the witnesses sometimes stating what was said, and sometimes stating only the conclusions that were arrived at.

Upon what principle can the admission of this evidence be sustained? They were not the statements of the defendant, nor were they statements made in his presence, at least, there is no evidence of his being present. And, if he was, it was not a proper time or place for him to make any reply, and his silence, under such circumstances, could not render them admissible.

This evidence, both upon principle, and by reason of the form in which it was given, ought not to have been received. *McKeen* v. *Gammon*, 33 Maine, 187; *Frye* v. *Gragg*, 35 Maine, 29; *State* v. *Bonney*, 35 Maine, 105; *Crowell* v. *Western Reserve Bank*, 3 Ohio, (N. S.) 406, (cited in 15 U. S. Dig. p. 255, § 320;) *Sheridan* v. *Smith*, 2 Hill, 539; 13 U. S. Dig. p. 303, § 282, p. 307, § 373; 2 U. S. Dig. p. 261, § 1305; 1 Greenl. on Ev. § 197, and note 2, citing *Melen* v. *Andrews*, 1 M. & M. 336, and other cases; 1 Greenl. on Ev. § 199.

4. The questions and answers excepted to in the testimony of Sampson Reed were inadmissible; and especially the question and answer in relation to dismissing the plaintiff from his service, and his motive for so doing.

5. The plaintiff deliberately and voluntarily destroyed the letters from defendant to her, and was then allowed to testify as to their contents. We respectfully contend, that the admission of this testimony, was not only erroneous, but in conflict with the plainest principles of justice. The plaintiff contemplated a suit against the defendant, for an alleged breach of promise to marry her. The defendant denied any such promise. He had written her twenty or twenty-five letters, and they had all been preserved. In the very nature of things, these letters must contain the best evidence of the true relations that had existed between them. She de-

liberately and voluntarily burned these letters, and then offered herself as a witness to prove their contents by parol. Can it be legal, can it be equitable to allow her to do so ?

Should not the rule admitting parol evidence of the contents of destroyed letters be received with this qualification, that it shall not avail a party, who has deliberately, voluntarily, and intentionally destroyed them ?

If the contents of these letters would aid the plaintiff in her suit, why, upon consultation with her sister, were they destroyed ? If the truth would avail, why destroy the only means by which it could be established with certainty, and resort to a species of evidence almost certain to involve error ? For who believes for a moment that after these letters had been thus destroyed, their contents would or could be truly stated to the jury by the lips of the plaintiff herself? Without any fault on his part, would not an adverse party be in danger of suffering from such evidence ? A candid mind will not doubt.

It may be said, that in destroying these letters, the plaintiff acted under the advice of her sister. No matter. The act was hers. If her sister's advice was good, she had the benefit of it; if it was bad, having adopted it, she must bear the consequences. The defendant ought not to suffer. Such a rule may sometimes work a seeming hardship, but the hardship will be the result of their own ill-advised acts; while a contrary rule would work greater and more frequent hardships upon innocent parties.

6. The plaintiff had no right, under any circumstances, to the contents of a part only of the letters from her to defendant. She had written letters after the first of January, 1848, and yet the question is limited to those written before that time. The whole, if any, should have been included. A part only of each letter was called for. This also was erroneous.

7. After the destruction of the defendant's letters to plaintiff, as before stated, had the plaintiff a right to call for, and use her letters to defendant, as evidence against him ? The Court cannot fail to perceive that in any case, and in such a

case as this, in particular, great injustice would be likely to be done by the introduction of the letters on one side only. If they were in answer to letters received, they could not be fully understood, in the absence of the latter. If they were replied to, the defendant would have a right to have the letters in reply read. If they were not replies, and were not replied to, but were letters addressed to the defendant, merely, they were not admissible against him at all. Under these circumstances, was it right to assume that the defendant withheld paper evidence, important to the other party, and that an important consideration was therefore raised? And, to tell the jury that the non-production of the letters under such circumstances, was a subject for their consideration? All that the defendant had ever said in his letters to the plaintiff, was necessarily to be left out, and all that she had ever written to him, was to go in, and because the defendant did not accede to such a one-sided arrangement, the jury were told, substantially, to punish him for his obstinacy, with unfavorable inferences. Was it any worse for the defendant to withhold these letters, than it was for the plaintiff to burn the letters in her possession?

That injustice was done the defendant, in relation to those letters, is too palpable not to be seen at a glance.

If the ruling was right, a party who wishes to get rid of the effect of letters, or rather one who prefers to give his own version of their contents, rather than have the original inspected, will have only to burn them in the presence of a witness, and his object is accomplished. Perhaps it may be said, that if the letters are fraudulently destroyed, parol evidence of their contents will not be received. Such a qualification of the rule may sound well in theory, but it will be of no practical benefit. The motive would be kept secret, and, as fraud is never presumed, how could the other party receive any benefit from the qualification? The better rule is, to exclude parol evidence of their contents, where the destruction of the original letters is deliberate and voluntary, and with a full knowledge that they might be wanted and might

be used as evidence by either party. We make it a point that this suit was in contemplation and was talked about, and the use of these letters, as evidence, discussed, at the very time they were burned.

We contended that, under the circumstances, if the letters in our possession had been produced, they were not competent evidence for plaintiff, and that their non-production was not withholding evidence important to the other party. The Judge ruled otherwise, and that the non-production of the letters, under the circumstances, was of itself, evidence for the consideration of the jury. This was erroneous, because, if the letters were not competent evidence for plaintiff, their non-production was of no importance, and if they were competent, the plaintiff, under the ruling of the Judge, might have proved their contents, and therefore their contents were withheld by defendant no more than by plaintiff.

If letters are offered against a party he may read his replies, (*Roe* v. *Day*, 7 C. & P. 705,) or prove a previous conversation to show the motive and intention in writing them. *Reay* v. *Richardson*, 2 C. M. & R. 422.

And where one party produces the letter of another, purporting to be in reply to a previous letter from himself, he is bound to call for and put in the letter to which it was an answer, as part of his own evidence. *Watson* v. *Moore*, 1 C. C. Hir. 626.

Unanswered letters are not competent evidence against a party, although found in his possession, and notice to produce such letters, will not entitle the other party to give parol evidence of their contents. *Fairlee* v. *Dentone*, 3 C. & P. 103.

And a letter found on the prisoner, was held to be no evidence of the facts therein stated. *Rex* v. *Plummer*, Rus. & Ry. C. C. 264.

If the plaintiff deliberately and voluntarily destroy a note, secondary evidence is inadmissible. *Blade* v. *Noland*, 12 Wend. 173.

Tobin *v.* Shaw.

*S. C. Andrews* argued for the plaintiff:—

That the instructions of the presiding Judge were correct, and afforded no ground for exceptions, and cited *Farrar* v. *Merrill,* 1 Greenl. 18; *McKenney* v. *Dingley,* 4 Greenl. 172, *Kelley* v. *Merrill,* 14 Maine, 228; *French* v. *Stanley,* 21 Maine, 516; *Hathaway* v. *Crosby & al.,* 17 Maine, 448; *Camden Railroad* v. *Belknap,* 21 Wend. 354; *Burnham* v. *Toothaker,* 19 Maine, 372; *Gilbert* v. *Woodbury,* 22 Maine, 250; *Dyer* v. *Green,* 23 Maine, 468; *Dodge* v. *Greeley,* 31 Maine, 343; *Ladd* v. *Dillingham,* 34 Maine, 318; *Darling* v *Dodge,* 36 Maine, 374;

The testimony objected to was properly admitted. *Clark* v. *Bigelow,* 16 Maine, 246; *Lewis* v. *Freeman,* 17 Maine, 260; 1 Greenl. on Ev. § § 51, 53, and cases cited in note, § § 102, 107, 108; 14 Mass. 245.

The opinion of the Court was drawn up by

TENNEY, C. J. — This action is for the recovery of damages for the alleged breach of the promise of the defendant to marry the plaintiff. It was proved that letters were written and sent by him to her, one of which was dated in 1848, and all the others were previous to that time. It did not appear that he had visited her subsequent to 1849, and in 1854 she destroyed his letters. At the trial, she offered the secondary evidence of the contents of these letters, which was objected to by the defendant, but received after evidence was introduced to show the circumstances under which the letters were destroyed, which last evidence was received also, subject to objection.

Was the secondary evidence of the contents of the letters competent? It is a general rule that, the best evidence, the thing is capable of, must be produced. The existence and contents of written evidence must be proved by its production, in order that the Court may determine its legal operation; to show that it is genuine, and that it is not made upon condition. *Legfield's case,* 10 Co. Rep. 88 to 96; Gilb. Law of Ev. 93. Exceptions to this rule were formerly confined to

a few extreme cases, such as burning of houses, robbing, or some unavoidable accident which caused the loss or destruction of the written evidence.

This rule was anciently enforced in practice with great strictness, but it has been much relaxed and extended in modern times from necessity, to prevent injustice.

In *Reed* v. *Brookman*, 3 T. Rep. 151, a declaration on a deed was sustained, and the *profert* dispensed with upon the general allegation of a loss by time and accident. In *Beckford* v. *Jackson*, 1 Esp. 337, the plaintiff counted on a deed lost or *mislaid*, upon which issue was taken, and the same was recognized as authorized by law, by Lord KENYON, who sat in the trial.

It may be stated as the doctrine of the law in this State, at the present day, supported by numerous decisions and general practice, that the contents of a writing, which is itself admissible, may be shown by secondary evidence, on proof of its destruction, and of its loss, after a careful and thorough search has been made in all places where there is reason to suppose that it may be found, (1 Stark. Ev. 349, note 1.) unless the proof required is necessarily in writing, under all circumstances.

But, in the case before us, the proof that the letters of the defendant were destroyed by the plaintiff intentionally, being incontrovertible, can their contents be proved by oral testimony ?

It is not insisted in behalf of the plaintiff, that a fraudulent destruction of the writing sought to be proved by parol evidence, by the party offering it, is any foundation for the introduction. Such a doctrine would allow one to take advantage of his own wrong, and would be dangerous in its consequences, especially, when the party causing the destruction can be witness in his own behalf. And, when the document has been destroyed by the party moving to prove its contents, the burthen is upon him to show, affirmatively, circumstances, which negative the fraudulent design. *Blade* v. *Noland*, 12 Wend. 173.

In the absence of fraud, can the destruction by the owner, be distinguished in principle, from that of any other accident or mistake? If a bond or promissory note of hand, should be destroyed by the holder, through an erroneous belief, that it was actually paid, or in consequence of the notorious insolvency of the debtor, will this preclude a recovery in an action upon full proof by secondary evidence, that it was really outstanding and in full force?

When the plaintiff was induced to suppose that her letters from the defendant would not be used, in a trial of a suit against him, in her favor, and she yielded to the advice of a sister, in whom she had reposed unlimited confidence, that it would be desirable that they should not be exposed to the perusal of those, who would read them, in her opinion, to gratify a feeling of curiosity, unmingled with any sympathy for her; perhaps, too, from a wish not to be reminded, by their existence, of what she, at the time of their receipt, regarded as a pledge of affection, followed by the unwilling conviction, from his coldness at least, so wounding to her sensibility, that a change had taken place in him in regard to herself, or that he was always untrue, can it be said that this is a case so unlike that when a loss of writings has occurred by accident or mistake, that the contents of such letters cannot be shown by oral testimony, when they have been destroyed? May not her acts, in committing them to the fire, be treated as a misapprehension, an accident, a mistake?

*Rawley* v. *Ball*, 3 Cowen, 302, was an action on a promissory note of hand, which was shown to have been lost, though after it became payable. It was held, that an action at law could not be maintained, the plaintiff's only remedy being in equity. It was so held by the Court, without proving the destruction of the note; implying, if the note was shown to be destroyed, secondary evidence of its contents would be admissible.

*Hughes* v. *Wheeler*, 8 Cowen, 77, was an action on a promissory note of hand; the writ also contained the money counts.

It was defended on the ground, that more than the legal rate of interest was embraced therein. On its being shown that the consideration of the note, was a former note free from usurious taint, and which was destroyed by the consent of both parties, it was held that the action might be maintained upon the former note, under the money counts. SOUTHERLAND, J., who delivered the opinion of the Court, remarked, " it is then, in principle, the common case of money had and received, &c., supported by proof of a promissory note, which is shown to have been destroyed by accident or misapprehension, or in any other manner, which does not amount to a legal discharge and satisfaction of it."

In *Livingston* v. *Rogers*, 2 Johns. Cases, 488, a letter of attorney was executed and delivered by the plaintiff to one McEvers, to transfer certain stocks on a condition to be performed by the other party. The attorney having failed to make the transfer, through the alleged omission to fulfill the condition as required by the contract, put the letter of attorney in his iron chest, of which he alone had the key; he never delivered it to the plaintiff, who did not have or see it after the attempt to execute the service, confided to him. It appeared that he searched for the same in his chest and elsewhere, without success, and he verily believed the same to be destroyed, not thinking it of any utility to be preserved. Parol evidence of its contents was offered by the plaintiff and rejected by the Court, on the defendant's objection, and a verdict was taken for the defendant, and judgment rendered thereon. The case was afterwards brought by a writ of error into the Court of errors. Chancellor LANSING was in favor of affirming the judgment, admitting, however, that " since Lord MANSFIELD began to preside in the Court of King's Bench, the decisions of English courts have assumed a degree of liberality, in adapting the ancient principles of jurisprudence, not only to the exigencies which the extent and activity of modern commercial speculations have rendered unavailable, but to every object of commutative justice, which can affect the interests of the members of a great and opulent

community." But he thought the rule, in this respect, had been completely preserved. It was remarked by Senator GOLD, in the same case, that "experience under the rule, has, in the progressive improvements of English jurisprudence, resulted in a relaxation of the law on this subject. The non-production of instruments is now excused for reasons more general and less specific, upon grounds more broad and liberal than were formerly admitted." And he was of the opinion that parol evidence of the contents of the power of attorney was admissible. But he said, on the admission of such testimony, should the trial disclose evidence, or reasonable grounds of suspicion, of a suppression of the instrument, or *mala fides* in the plaintiff, &c., it will be the duty of the Judge to direct and charge the jury for the defendant. A majority of the Court was of the same opinion, and judgment below was reversed.

The decision of the Court of Errors, in the case last cited, was examined in that of *Blade* v. *Noland,* 12 Wend. 173, in an action upon a promissory note of hand, in which there was evidence to show that the note was destroyed by the payee and holder, very soon after it was made, whereupon the secondary evidence of its contents was allowed to be introduced, and judgment was rendered for the plaintiff. The case came into the Supreme Court on a writ of error, and the judgment was reversed. NELSON, J., in delivering the opinion of the Court, after remarking that there was nothing in the case accounting for, or affording any explanation of the act, consistent with an honest and justifiable purpose, said, " such explanation the plaintiff was bound to give affirmatively, for it would be a violation of the principles upon which inferior and secondary evidence is tolerated, to allow a party the benefit of it who has willfully destroyed the higher and better testimony." "It was said by Chancellor LANSING, after an examination of all the leading cases on the subject, that secondary evidence was not admissible to prove the contents of a paper when the original had been lost by the *negligence or laches* of the party, or his attorney. He failed to convince

the Court of Errors to adopt his views in a case where the negligence was not so great, as to create a suspicion of design. Farther than this, I could not consent to extend the rule. I have examined all the cases decided by this Court, where the evidence has been admitted, and, in all of them, the original deed or writing was lost or destroyed by time, mistake or accident, or was in the hands of the adverse party. Where there was evidence of the actual destruction of it, the act was shown to have taken place under circumstances that repelled all inference of fraudulent design."

We are satisfied, that, notwithstanding the party wishing to avail himself of the contents of a writing, which, if in existence, would be admissible, has destroyed it, yet, if it is satisfactorily shown that the act of destruction was not the result of a fraudulent intent, the case is brought within the exception to the rule of law, and secondary evidence of the contents of the paper is admissible.

Has the plaintiff in this case, by legal evidence, repelled all inference of a fraudulent purpose, in burning the letters received from the defendant?

It was a question for the Court to determine in the first place, at least, whether the letters had been lost or destroyed. 1 Stark. Ev. 354. And it was alike for the Court to determine from the evidence that their destruction was not the fruit of a dishonest purpose. And, on this point, no question is presented in the exceptions. But, it is contended in behalf of the defendant, that the evidence received to repel the inference of fraud, was inadmissible.

Mrs. Bishop, the sister of the plaintiff, was allowed to testify, that she had possession of the letters written by the defendant to the plaintiff, about twenty in number, at her own house for a long time; but being about to remove from the State, she carried them to her father's, where she went to make a visit, and that she then advised the plaintiff to destroy them, as, in a prosecution against the defendant, they would not be needed or used in Court, and, under the apprehension of herself and the plaintiff, that they might be mislaid and fall into

the hands of some one, who, they preferred should not have them, the latter burnt them. This evidence was properly received, as a part of the *res gesta*, and as explanatory of the motive which influenced the plaintiff in her acts at the same time. 1 Greenl. Ev. § 110.

The plaintiff's father having testified, that the last time the defendant was at his house was in May, 1849, when he came with his brother and dined there; and the time next before that, when he visited his house, was, according to his best recollection, in January, 1848, was inquired of by the plaintiff's attorney, if he observed any mental difference in the plaintiff after he left. He was allowed to answer against the defendant's objection, that, after the defendant had gone, it was witnesses' impression, that she appeared more melancholy and of less life and animation; and at one time he found her weeping without knowing the cause.

It is very clear, when the proof in a case of this sort, is sufficient to entitle the plaintiff to recover, that anxiety of mind is an element to be considered in the estimation of damages, if produced by the violation of the defendant's promise. Certain affections of the mind, such as joy and grief, hope and despondency, are often made known to an intimate acquaintance without any verbal communication, by the general appearance and conduct of the party, with entire certainty, when the facts on which conviction is founded, in the mind of an acquaintance, cannot be fully disclosed in language, so as to be understood by a stranger. The shedding of tears is evidence of some unusual condition of the mind. The evidence, in this respect, was such as practice has sanctioned, and is not deemed improper.

Evidence was introduced by the plaintiff for the purpose of showing, that the defendant and his counsel were notified to produce the letters of the plaintiff to the defendant. One only was produced, and the counsel for the plaintiff were allowed to testify to facts which occurred in Court at a former trial of the case, tending to show, that the letters so called for, were in Court, and the plaintiff's counsel were

not allowed to use or inspect them. The letters of the defendant being admissible, and the contents thereof being properly allowed to be proved by parol evidence, the letters of the plaintiff may reasonably be presumed to be necessary to render his letters intelligible in many respects. The letters which passed between the parties are species of written conversation, and that this correspondence may be fully understood, the two parts should be read in connection. If produced, they may have been competent evidence. Being withheld, when the evidence objected to showed that they could have been exhibited to the plaintiff's counsel, these facts were proper for the consideration of the jury, under the 27th rule of the code of rules prepared by this Court in 1855, (37 Maine, 576,)—"When written evidence is in the hands of the adverse party, no evidence of its contents will be admitted, unless previous notice to produce shall have been given to such adverse party or his attorney, nor will counsel be permitted to comment upon a refusal to produce such evidence, without first proving such notice."

Sampson Reed testified to his knowledge of the plaintiff from her childhood to the time of the trial; that she was at his house in the winter of 1849, where she remained about ten days and did work there, and, in answer to a question of the plaintiff's counsel not objected to, stated that she appeared sober and melancholy, and that he saw her in tears a number of times. Upon the foregoing statement, he was asked whether he dismissed the plaintiff from his service, and, if so, for what cause. The witness answered that he dismissed her on account of her want of capacity to do her work. This answer was a subject of objection. The material part of this answer is, that the plaintiff was incapable to do her work, to such a degree that he chose to discharge her for that reason. When this is considered in connection with the former part of his testimony, we think it unobjectionable.

The plaintiff, upon inquiry of her counsel, stated, so far as she recollected, the contents of a letter from the defend-

---

Tobin *v.* Shaw.

---

ant in relation to a thanksgiving ball, which was admitted to have occurred on Nov. 25, 1847. This was allowed, under the ruling that the contents of his letters could be proved by parol, and the objection cannot be sustained.

The ruling of the Judge, allowing two questions to be put to the defendant, on cross-examination, touching a conditional engagement between him and the plaintiff, which were objected to, becomes unimportant, because he stated that he had no recollection of the matter to which the inquiries related; and he could not be prejudiced by the questions alone. But, had his recollection been more perfect, we perceive no valid objection to the questions.

The instructions to the jury, in relation to the plaintiff's letter to the defendant, dated Feb. 6, 1848, read in her behalf without objection, were entirely correct. It being evidence, regarded by the defendant as important for him, in making out his defence, it was, of course, a matter of consideration by the jury. The other instructions given were authorized by the 27th rule of this Court, which has been already considered.                    *Exceptions overruled.*

HATHAWAY, CUTTING, MAY, GOODENOW, and DAVIS, J. J., concurred.